In re: **WESTERN STATES WHOLESALE NATURAL GAS ANTITRUST LITIGATION,**

**And All Related Cases.**

**Texas–Ohio, Inc., on behalf of itself and all others similarly situated, Plaintiff,**

v.

**Centerpoint Energy, Inc., et al., Defendants.**

**No. MDL 1566**
**Nos. CVS031431PMP(PAL), CVS040465PMP(PAL).**

United States District Court, D. Nevada.

April 8, 2005.

Allen Hoffman, Jerold Hoffman, Marc Edelson, Hoffman & Edelson, Doyleston, PA, Dennis Stewart, Hulett Harper Stewart, LLP, San Diego, CA, Kate Reznick, Michael Boni, Kohn Swift & Graf, PC, Philadelphia, PA, for Plaintiff.

Douglas Tribble, Pillsbury Winthrop, LLP, Peter Benzian, San Diego, CA, John Grenfell, Michael Kass, San Francisco, CA, Mark Haddad, Alan Yudkowsky, Peter Jazayeri, Los Angeles, CA, for Defendants.

Walter J. Lack, Engstrom, Lipscomb & Lack, Los Angeles, CA, for Haleema Silverman, Michael Silverman, Lynette Stevenson. Tom Stevenson, Team Design dba Timothy Engeln, Inc.

R. Alexander Saveri, Saveri & Saveri, Inc., San Francisco, CA, for Shanghai 1930 Restaurant Partners, L.P.

Clinton P. Walker, Damrell, Nelson, Schrimp, Pallios, Pacher & Selva, Modesto, CA, for A.L. Gilbert & Co.

Daniel J. Mulligan, Jenkins & Mulligan, San Francisco, CA, for Oberti Wholesale Foods, Inc.

William H. Parish, Parish & Small, Stockton, CA, for Craig Podesta.

Dennis Stewart, Hulett Harper Stewart Ixp, San Diego, CA, for Texas-Ohio Energy, Inc.

Daniel C. Girard, Girard Gibbs & De Bartolomeo LLP, San Francisco, CA, for David C. Brown.

Reginald Terrell, Terrell Law Group, Richmond, CA, for Lois The Pie Queen.

Barry R. Himmelstein, Lieff, Cabraser, Heimann & Bernstein, LLP, San Francisco, CA, for H & M Roses, Inc.; Uyeda, Laurence.

Brad N. Baker, Baker, Burton & Lundy, Hermosa Beach, CA, for Team Design.

G. Mark Albright, Albright, Stoddard, Warnick & Palmer, P.C., Las Vegas, NV, MDL 1566 Liason Counsel Plaintiffs.

Joseph W. Cotchett, Cotchett, Pitre, Simon & McCarthy, Burlingame, CA, for City of Los Angeles Department of Water and Power.

Gregory J. Copeland, Baker & Botts, Houston, TX, for Reliant Energy Services, Inc., Reliant Energy, Inc., Reliant Resources, Inc. and Kathleen Zanchoni.

Joel B. Kleinman, Dickstein Shapiro Morin & Oshinsky LLP, Washington, DC, for Duke Energy Corporation, Duke Energy Field Services, Inc., Duke Energy North America, LLC and Duke Energy Trading and Marketing, L.L.C.

Richard P. Levy, Gibson, Dunn & Crutcher, LLP, Los Angeles, CA, for Sempra Energy.

Robert A. Sacks, Sullivan & Cromwell LLP, Los Angeles, CA, for EnCana Corp. and WD Energy Services, Inc.

Mark E. Haddad, Sidley Austin Brown & Wood LLP, Los Angeles, CA, for CMS Energy Corporation.

Diane E. Pritchard, Morrison & Foerster LLP, San Francisco, CA, for El Paso Corporation.

Joshua D. Lichtman, Fulbright & Jaworski, LLP, Los Angeles, CA, for Coral Energy Resources, L.P.

John L. Hendricks, Akin Gump Strauss Hauer & Feld LLP, Dallas, TX, for Centerpoint Energy Inc.

Alan Yudkowsky, Stroock & Stroock & Lavan LLP, Los Angeles, CA, for Sempra Energy Trading Corp.

Jonathan Abram, Hogan & Hartson LLP, Washington, DC, for American Electric Power, Inc.

Douglas Tribble, Pillsbury Winthrop LLP, San Diego, CA, for Dynegy Inc. and West Coast Power LLC.

Michael C. Lieb, Morgan, Lewis & Bockius LLP, Los Angeles, CA, for Xcel Energy.

### ORDER

PRO, Chief Judge.

Before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint (CV–S–03–1431, Doc. # 59). A hearing was conducted on January 27, 2005, following which the parties filed supplemental letter briefs.

## I. BACKGROUND

This case arises out of the California energy crisis of 2000–2001. During that period, the California energy and natural gas markets became mutually dysfunctional, and, feeding off each other spiraled into a statewide energy crisis. Amendments to Blanket Sales Certificates, 68 Fed.Reg. 66323, 66325 (Nov. 17, 2003) (to be codified at 18 C.F.R. § 284.288). The Federal Energy Regulatory Commission ("FERC") undertook a fact finding investigation of the market crisis in which it concluded, "[S]pot gas prices rose to extraordinary levels, facilitating the unprecedented price increase in the electricity market." *Id.* FERC concluded the dysfunctions in the natural gas market stemmed from efforts to manipulate price indices compiled by private trade publications, including reporting of false data and wash trading.[1]

Plaintiff Texas–Ohio, Inc. ("Texas–Ohio") originally filed this action in United States District Court for the Central District of California seeking declaratory and injunctive relief and to recover damages from Defendants Centerpoint Energy, Inc., Coral Energy Resources, L.P., Duke Energy Corporation, Duke Energy Trading and Marketing, L.L.C., West Coast Power, Encana Corporation, WD Energy Services, Reliant Energy Services, Inc., Reliant Resources, Inc., Sempra Energy Trading Corporation, The Williams Companies, Inc., and Xcel Energy, Inc., on behalf of similarly situated natural gas rate payers. Texas–Ohio claims that Defendants violated the Sherman Act, 14 U.S.C. § 1, the Cartwright Act, and California Unfair Competition Laws, Cal. Bus. & Prof.Code § 17200, by engaging in false reporting of natural gas prices; by participating in wash trades, including Enron Online ("EOL") facilitated wash trades; by entering into illegal netting agreements;[2] and by conspiring not to compete in natural gas markets.

On May 3, 2004, the Judicial Panel on Multidistrict Litigation transferred the action to this Court for coordinated and consolidated proceedings pursuant to 28 U.S.C. § 1407.[3] Defendants now move this Court to dismiss Texas–Ohio's Complaint for failure to state a claim pursuant

---

1. "A 'wash trade' is a prearranged pair of trades of the same good between parties, resulting in no net change in ownership. It creates an illusion of a more liquid and active market and it helps bolster false trading revenue figures." Federal Energy Regulatory Commission, *Commission Revoked Enron's Market–Based Rate Authority, Blanket Gas Certificates Terminated,* (June 25, 2003), *at* http://www.ferc. gov/p ress–room/ pr–archives/2003/2003–2/06–25–03 _enron.pdf.

2. The term "netting agreements" refers to an agreement between parties to report the sale price of a particular transaction as a whole,

averaging the lowest prices and the highest prices, thus creating an appearance of an overall higher market price in natural gas. *See* Federal Energy Regulatory Commission, *Final Report on Price Manipulation in Western Markets: Fact–Finding Investigation of Potential Manipulation of Electric and Natural Gas Prices,* Docket No. PA02–2–00, II–7 (Mar. 2003).

3. Pursuant to stipulation, Plaintiff Texas–Ohio dismissed this action without prejudice against Defendants Centerpoint Energy, Inc. (# 73) and Sempra Energy Trading Corporation (# 88).

to Federal Rule of Civil Procedure 12(b)(6).

## II. DISCUSSION

Defendants argue that Texas–Ohio's claims should be dismissed under the doctrine of field preemption and the filed rate doctrine. Specifically, Defendants contend that Section 717(b) of the Natural Gas Act ("NGA"), 15 U.S.C. § 717, et seq, provides the Federal Energy Regulatory Commission ("FERC") with plenary jurisdiction over all sales for resale of natural gas in interstate commerce, thereby preempting state jurisdiction over the subject matter of Texas–Ohio's suit. Defendants further argue that the monetary relief sought by Texas–Ohio would require a damage calculation that would compare the actual filed rate to the rate that would have occurred absent the misconduct alleged. Defendants assert that such a comparison would require this Court to operate in an area reserved exclusively to FERC. As a result, Defendants maintain that Texas–Ohio's Sherman Act claims and state law claims for monetary damages are barred by the filed rate doctrine which provides that no court may substitute its own judgment on the reasonableness of a filed rate for the judgment of the responsible federal regulatory authority.

The NGA charges FERC with the statutory authority to ensure that all rates charged for the interstate sale of natural gas be just and reasonable. Section 717c(a) of the NGA provides:

All rates and charges made, demanded, or received by any natural-gas company for or in connection with the transportation or sale of natural gas subject to the jurisdiction of the Commission, and all rules and regulations affecting or pertaining to such rates or charges, shall be just and reasonable, and any such rate or charge that is not just and reasonable is declared to be unlawful.

15 U.S.C. § 717c(a). In interpreting the scope of FERC's power under the NGA, the Supreme Court has held that, "[t]he authority to decide whether the rates are reasonable is vested by § 4 of the Act solely in the Commission." *Arkansas Louisiana Gas Co. v. Hall,* 453 U.S. 571, 573, 101 S.Ct. 2925, 69 L.Ed.2d 856 (1981) (citing *FPC v. Hope Natural Gas Co.,* 320 U.S. 591, 611, 64 S.Ct. 281, 88 L.Ed. 333 (1944)).

 "The 'filed rate doctrine' prohibits a federally regulated seller of natural gas from charging rates higher than those filed with the Federal Energy Regulatory Commission pursuant to the Natural Gas Act, 52 Stat. 821." *Arkansas Louisiana Gas Co.,* 453 U.S. 571, 573, 101 S.Ct. 2925, 69 L.Ed.2d 856 (1981). Two basic principles underlie the filed rate doctrine: 1) "no court may substitute its own judgment on reasonableness for the judgment of the Commission," and 2) the authority decide whether rates are reasonable is vested solely in FERC. *Id.* "In sum, the Act bars a regulated seller of natural gas from collecting a rate other than the one filed with the Commission and prevents the Commission itself from imposing a rate increase for gas already sold." *Id.* at 578, 101 S.Ct. 2925. The filed rate doctrine extends to the retroactive award of damages under state law. *Id.* at 580, 101 S.Ct. 2925. As the Supreme Court held in *Arkansas Louisiana Gas Co.,* "Congress here has granted exclusive authority over rate regulation to the Commission. In so doing, Congress withheld the authority to grant retroactive rate increases or to permit collection of a rate other than the one on file." *Id.*

 "The filed rate doctrine applies both to federal antitrust actions and to state law causes of action relating to rates established by federal agencies. To permit recovery under state law would allow a state court (or a federal court applying

state law) to undermine the authority of a federal agency and would impermissibly contravene the Supremacy Clause." *County of Stanislaus v. Pacific Gas and Elec. Co.*, 114 F.3d 858, 863 (9th Cir.1997) (citing *Arkansas Louisiana Gas*, 453 U.S. at 580, 101 S.Ct. 2925). In *Stanislaus*, consumers of natural gas sued a public utility company alleging antitrust claims for price fixing, market preclusion, and state antitrust claims. The Ninth Circuit held that because FERC reviewed the price set between the plaintiffs and the defendant, the filed rate doctrine barred all claims in the case. Specifically, the filed rate doctrine barred the calculation of damages because the Court would have to decide what the rate would have been absent the alleged misconduct. "[A] claim for damages based on a filed rate would be too speculative, because it: 'would require a showing that a hypothetical lower rate should and would have been adopted by [FERC]. Whether or not the agency would have actually approved a different rate was a question best left to the agency itself, rather than the courts.'" *Id.* (citing *Cost Mgmt. Servs. v. Washington Natural Gas Co.*, 99 F.3d 937, 944 (9th Cir.1996)).

Each of the claims set forth in Texas–Ohio's Complaint requires that it show damages. *See McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 811 (9th Cir.1988) (Sherman Act); *Quelimane Co., Inc. v. Stewart Title Guaranty Co.*, 19 Cal.4th 26, 77 Cal. Rptr.2d 709, 960 P.2d 513, 525 (1998) (California Unfair Competition Laws). Texas–Ohio's Complaint also seeks declaratory and injunctive relief in the form of "[d]etermining and declaring that judgment be entered against Defendants, jointly and severally, and in favor of Plaintiff and the Class for damages, restitution, and disgorgement of ill-gotten gains as allowed by law and equity as determined to have been sustained by them...." (Compl. at 21–22.) Additionally, Texas–Ohio requests that "each of the Defendants, their successors, assigns, subsidiaries, and transferees, and their respective officers, directors, agents, and employees, and all other persons acting or claiming to act on behalf of them or in concert with them, be perpetually enjoined and restrained from in any manner, directly or indirectly, continuing, maintaining, or renewing the combination and conspiracy alleged herein." (*Id.* at 22.) Finally, Texas–Ohio requests that this Court award "to Plaintiff and the Class treble the amount of actual damages determined to have been sustained by them as a result of the conduct of Defendants complained of herein as provided by law, and that judgement be entered against each Defendant for the amount so determined." (*Id.*)

▮ Relying on *Arkansas Louisiana Gas Co.*, 453 U.S. 571, 101 S.Ct. 2925, 69 L.Ed.2d 856 (1981), Texas–Ohio argues that courts consistently have required that the filed rate doctrine be predicated upon the actual filing and approval of the rates by a federal regulatory body, such as FERC. In that case, respondents had become what was considered "small producers of natural gas" and were therefore not required to file their rates with FERC. *Id.* at 576 n. 5, 101 S.Ct. 2925. The Court held that the filed rate doctrine prohibited the award of damages for petitioner's breach of contract during the time that respondents were subject to FERC's jurisdiction. However, in a footnote, the Court stated that "[t]here is no bar to damages for the period after respondents gained 'small producer' status." *Id.* at 585, n. 14, 101 S.Ct. 2925. Texas–Ohio argues that *Arkansas Louisiana Gas Co.* stands for the proposition that the filed rate doctrine is dependant on the rate actually having been filed and approved by FERC. Consequently, Texas–Ohio argues that due to the deregulation of the natural gas market, Defendants never filed the prices at issue with

FERC, and therefore the filed rate doctrine does not bar Texas–Ohio's claims.

Texas–Ohio further argues that the Ninth Circuit's decision in *Stanislaus* confirms that for the filed rate doctrine to be effective, a rate must be filed and approved by FERC. In *Stanislaus,* the Ninth Circuit Court of Appeals stated:

Here, the sale and transportation of natural gas from Canada to California cleared several levels of state and federal review: FERC reviewed the price that PG & E paid to PGT for the gas; ERA reviewed the import contract between A & S and PGT; and CPUC reviewed the retail prices that PG & E charged to its California customers. For purposes of the filed rate doctrine, the two levels of federal review are sufficient to bar the claims—state and federal—that plaintiffs press in this action.

*Stanislaus,* 114 F.3d at 863. Texas–Ohio relies on *Stanislaus* for the proposition that the filed rate doctrine is predicated upon the presence of a filed rate, which is absent here. The Court disagrees.

 The essential purpose of the filed rate doctrine is to protect the jurisdiction of a regulatory body that Congress has designated to determine whether rates charged, such as those in the natural gas market, are just and reasonable. Under the Natural Gas Act, FERC retains statutory authority over wholesale natural gas prices and therefore the filed rate doctrine applies even though FERC, in exercising its authority, chose to move toward a market-based system.

The Court concludes that Texas–Ohio's Sherman Act claims, as well as the state law claims, are barred by the filed rate doctrine. The determination of damages as requested by Texas–Ohio would require this Court to speculate upon what rates would have been charged in the natural gas market absent Defendants' alleged misconduct by assuming a hypothetical rate in violation of the filed rate doctrine. *See Public Util. Dist. No. 1 of Grays Harbor County Wash. v. IDACOR,* 379 F.3d 641, 651–52 (9th Cir.2004). In *Arkansas Louisiana Gas Co.,* the Supreme Court stated it would "undermine the congressional scheme of uniform rate regulation to allow a state court to award as damages a rate never filed with the Commission and thus never found to be reasonable within the meaning of the Act." 453 U.S. at 579, 101 S.Ct. 2925. The same is true in this case. To calculate the necessary damages under both the Sherman Act and Texas–Ohio's state law claims, this Court would be required to make a determination as to what a just or reasonable rate would have been, thereby usurping a function that Congress explicitly has assigned to FERC. *See id.* at 582, 101 S.Ct. 2925. The Ninth Circuit noted:

Plaintiffs claim that defendants' FERC-approved rates were the product of antitrust violations, and seek as damages the 'overcharge' that resulted from the fixed prices. This is precisely what the filed rate doctrine prohibits.

*Stanislaus,* 114 F.3d at 863. As in *Stanislaus,* the filed rate doctrine bars Texas–Ohio from claiming damages under both the Sherman Act and the state law claims, therefore Texas–Ohio's claims must be dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

The recent ruling by the Ninth Circuit Court of Appeals in *Grays Harbor* does not compel a different result. In *Grays Harbor,* the court held that, "while market-based rates may not have historically been the type of rate envisioned by the filed rate doctrine, we conclude that they do not fall outside of the purview of the doctrine." In *Grays Harbor,* a public utility district brought state court actions against energy wholesalers. There the

plaintiff argued, as Texas–Ohio does here, that the filed rate doctrine does not preempt their state claims because of the "market-based nature of the rates at issue" in that case. *Id.* at 651. The Ninth Circuit Court of Appeals rejected that argument holding that, despite the move towards market-based rates, FERC maintains continued over-sight of the market to ensure the rates are just and reasonable in compliance with the Federal Power Act ("FPA"). *Id.*

Texas–Ohio argues that *Grays Harbor* and its progeny are distinguishable from the present matter, because that line of cases dealt specifically with the electricity market, not the natural gas market. In supplemental briefing, Texas–Ohio argues that "decisions based on the electricity market cannot be generalized to the natural gas market given the wide discrepancies in levels of regulation of the two markets at the time of the events giving rise to this action." (CV–S–03–1431, Doc. # 152, Pl.'s Letter.) Texas–Ohio cites to this Court's prior order, *In re Western States Wholesale Natural Gas Antitrust Litig.*, 346 F.Supp.2d 1123 (D.Nev.2004), for the proposition that the differences between the natural gas market and the electricity market make the recent Ninth Circuit decisions inapplicable to the present case. However, Texas–Ohio's reliance on this Court's previous Order is misplaced.

 This Court has recognized the distinct differences between the natural gas market and the electricity market. *See In re Natural Gas Antitrust Litig.*, 346 F.Supp.2d at 1139. However, the issue previously before the Court was whether California state court jurisdiction is preempted under the doctrines of complete preemption and conflict preemption because the Natural Gas Act vests exclusive jurisdiction in FERC. This Court held that in enacting the NGA, Congress did not intend to preempt all state action, includ-

ing state unfair competition laws, and that the doctrine of complete preemption thus did not apply. *Id.* at 1132–33. In so doing, this Court rejected the argument that for purposes of federal preemption, decisions regarding the natural gas market and the energy market are interchangeable. Rather, this Court held that because the natural gas and energy markets are substantially different, the recent Ninth Circuit decision in *Grays Harbor*, and its progeny, "d[id] not affect the outcome of the cases pending in front of this Court, because they do not address the unique context of the natural gas market." *Id.* at 1141. Notably, this Court declined to consider whether the filed rate doctrine barred Texas–Ohio's claim. Unlike the doctrine of complete preemption, which may serve as a basis for federal jurisdiction, the filed rate doctrine is a defense on the merits. Therefore it cannot serve as a jurisdictional basis to authorize removal to federal court. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 62, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) (citing *Gully v. First Nat'l Bank*, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936)).

### III. CONCLUSION

Because the Court finds that the filed rate doctrine bars Plaintiff Texas–Ohio's claims against Defendants in this case, the Court need not consider Defendants' alternative federal preemption argument.

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss Plaintiff's Complaint (CV–S–03–1431, Doc. # 59) is hereby GRANTED.

IT IS FURTHER ORDERED that all other Motions pending in this action are DENIED as moot.